IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CELERITY Q, LTD., : | |
| : | |
| Plaintiff, : | |
| : | Case No. C2-09-CV-377 |
| v. : | |
| : | JUDGE ALGENON L. MARBLEY |
| CSDC SYSTEMS, INC. : | Magistrate Judge Abel |
| : | |
| Defendants. : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on Defendant CSDC Systems, Inc.'s ("CSDC") Motion to Dismiss Plaintiff CelerityQ, LTD.'s ("CelerityQ") Complaint. (Dkt. 5). CelerityQ sued CSDC alleging breach of contract in regards to a Teaming Agreement. CSDC moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that the Teaming Agreement was not an enforceable contract. For the reasons set forth below, CSDC's motion is **DENIED**.

### II. BACKGROUND

On February 11, 2008, CelerityQ and CSDC entered in a Teaming Agreement with respect to a construction project for the State of Ohio ("the Project"). CelerityQ alleges the Teaming Agreement was the culmination of meetings and negotiations between the parties, and was intended as a formalization of their working relationship with respect to the Project. (Dkt. 2, ¶¶ 7-8). CSDC's bid on the Project was accepted, and CSDC began work in January 2009. CelerityQ alleges that CSDC breached the Teaming Agreement by failing to allow it to provide services for the Project that were agreed upon in the Teaming Agreement. CSDC contends that

1

the Teaming Agreement is not an enforceable contract, and "is nothing more than an indefinite, non-binding, and unenforceable agreement to agree." (Dkt. 22, 6). The Teaming Agreement reads:

> This letter is to formally recognize the teaming arrangement agreed to in principle by CSDC Systems Inc. and CelerityQ. It is specific to the proposal issued January 18, 2008 to deliver a Inspection Licensing and Certification Application by the CelerityQ for work related to the **Project**. Upon award of the RFP both parties agree to finalize the terms of their responsibility under a formal Subcontract.
>
> **CSDC** intends to submit a response to the mentioned RFP and intends to include **CelerityQ** in its proposal as a sub-contractor. CelerityQ will provide business anayst [sic] support and may assist withdata [sic] conversion and / or integration services. CelerityQ agrees to assist in the preparation and support of **CSDC**'s proposal in its area of expertise. CelerityQ will provide resources equal to minimum of 20% of the final contract amount.
>
> **CSDC** will not solicit submissions from any other party in the area of conversion and / or integration services. CelertiyQ will not assist nor provide submissions to any other party, including directly to the **Client**, with respect to the **Project**[.] It is anticipated that with regard to any phases of the **Project**, it may be necessary for the parties to exchange Information, Materials and Strategies whether in oral, written or other tangible form. **CSDC** and CelerityQ agree to protect one another's interest by maintaining the confidentiality of the information, materials and strategies, including the proposal in response to the **Project**. Moreover, any material, other than the Proposal, exchanged or used during the Proposal preparation, shall remain the property of its owner and shall be remitted upon the completion of the Proposal to its original owner, including copies made, whether on paper or elctronic [sic] media.
>
> In trust and good faith, should either party be unable to fulfill its obligations, the party in default shall immediately advise the other party in order to resolve and expedite the satisfactory solution to that deficiency. Should the RFP or the **Project** be of a different nature than expected, both parties agree to negotiate in good faith a resolution to the above expressed intent.

> This agreement is governed by the laws of the Province of Ontario. This Agreement shall terminate one year from the execution date identified above; however, the parties' obligations with respect to Confidential Information disclosed to it prior to termination shall not be affected.

The parties' initial briefing regarding CSDC's Motion to Dismiss analyzed whether a contract existed under Ohio law. However, the Teaming Agreement states that it "is governed by the laws of the Province of Ontario." Therefore, the Court ordered both parties to submit supplemental briefing on the issues of: (1) whether, under Ontario law, the Court may decide whether an enforceable contract exists as a matter of law on a motion to dismiss; and (2) whether, under Ontario law, an enforceable contract exists on the facts of this case. (Dkt. 19).

### III. STANDARD OF REVIEW

A case may be dismissed if the complaint does not state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Consequently, the Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *Murphy v. Sofamor Danek Gp., Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). The Court is not required, however to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 555 (2007).

3

Although liberal, the Rule 12(b)(6) standard requires the complaint to assert more than the bare legal conclusions to survive a motion to dismiss. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993)(citation omitted). The complaint must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (*quoting Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). While a complaint need not contain "detailed factual allegations," its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 556(2007). A complaint that suggests "the mere possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950 (*citing Twombly*, 550 U.S. at 556).

## IV. LAW & ANALYSIS

### A. CHOICE OF LAW

A federal court, sitting in diversity, applies the substantive law of the state in which district court sits. *Erie R. Co v. Tompkins*, 304 U.S. 64, 78, (1938); *Hisrich v. Volvo Cars of North America, Inc.*, 226 F.3d 445, 449 (6th Cir. 2000). Where there is a question regarding which state's law governs an action, "a federal court whose jurisdiction is based on diversity of citizenship must apply the conflict of law rules of the forum state." *Johnson v. Ventra Group, Inc*. 191 F.3d 732, 738 (6th Cir. 1999) (*citing Klaxon Co. v. Stentor Elec. Mgf. Co.*, 313 U.S. 487, 490 (1941)). Ohio has adopted Section 187 of the Restatement of Conflicts. *See Schulke Radio Prod. Ltd. v. Midwestern Broad Co.*, 453 N.E.2d 683, 686 (Ohio 1983). Accordingly, "subject to very limited exceptions, the law of the state chosen by the parties to a contract will govern their contractual rights and duties." *Ohayon v. Safeco Ins. Co.*, 747 N.E.2d 206, 209 (Ohio 2001). The

4

Teaming Agreement states that it "is governed by the laws of the Province of Ontario." The Court must therefore apply Ontario law in deciding whether a valid contract exists in this case.

## B. BREACH OF CONTRACT

In Count I of its Complaint, CelerityQ alleges that CSDC failed to the comply with the terms of the Teaming Agreement by not allowing CelerityQ to provide any services for the Project. CSDC contends that the Teaming Agreement is not an enforceable contract, and "is nothing more than an indefinite, non-binding, and unenforceable agreement to agree" (Dkt. 22). Under Ontario law, a contract is formed when the parties have agreed on the essential terms and intend to be bound. *Wallace v. Allen*, [2007] O.J. No. 1074, ¶¶ 77-112 (Can.). Parties "may bind themselves to execute at a future date a formal written agreement containing specific terms and conditions. When they agree on all of the essential provisions to be incorporated in a formal document with the intention that their agreement shall thereupon become binding, they will have fulfilled all the requisites for the formation of a contract." *Bawitko Inv. Ltd. v. Kernels Popcorn Ltd.*, [1991] 53 O.A.C. 314, ¶ 20 (Can.).

There is an exception to the general rule, however: "when the original contract is incomplete because essential provision intended to govern the contractual relation have not been settled or agreed upon; or the contract is too general or uncertain to be valid in itself and is dependant on the making of a formal contract…the original or preliminary agreement cannot constitute an enforceable contract." *Id.*, at ¶ 21. Construing the facts in the light most favorable to the non-moving party, CelerityQ's Complaint alleges factual allegations sufficient to support a claim under which relief can be granted.

For purposes of a Motion to Dismiss, the Complaint and Teaming Agreement are sufficient to allege that the parties have agreed to the essential terms and intend to be bound. Substantial contractual obligations between the parties are laid out in the Teaming Agreement: "CelerityQ will provide business anayst [sic] support and may assist withdata [sic] conversion and / or integration services. CelerityQ agrees to assist in the preparation and support of CSDC's proposal in its area of expertise." (Teaming Agreement). Additionally, the Teaming Agreement provides that "CelerityQ will provide resources equal to minimum of 20% of the final contract amount." *Id.* The parties were required to give notice in the event that they were unable to perform their obligation under the agreement, and both parties were forbidden from soliciting bids from other contractors.

Furthermore, the Teaming Agreement and Complaint are sufficient to show the parties intended to be bound. The parties entered into the Teaming Agreement after a series of meeting to formalize "their working relationship". (Dkt. 2 at ¶¶ 7-8). The teaming agreement expressly says CSDC "intends to include CelerityQ in its proposal as a subcontractor." (Teaming Agreement). Based on this language, the Court can only deduce that CSDC intended to use CelerityQ as a sub-contractor for the Project. The intention is also shown by the parties' agreement to communicate in the event that either party was unable to fulfill its obligations. If the parties did not intend to be bound and fulfill the obligations in the agreement, there would be no reason for one party to inform the other party when in fact it did not perform. The Teaming agreement also states, "[s]hould the RFP or the Project be of a different nature than expected, both parties agree to negotiate in good faith a resolution to the above expressed intent." (*Id.*). The specific use of the work "intent" shows the parties intended the preceding passages in the

Teaming Agreement to be binding absent a change in the RFP or Project. These allegations are sufficient to plead the existence of a valid contract.

CSDC is correct in its contention that under Ontario law, "agreements to agree" are unenforceable. *Dominion Stores Ltd. v. Untied Trust Co.*, [1973] 2 O.R.2d 279, 283-85 (Can.); *Ontario Ltd. v. Metropolitan Toronto Condominium Corp.*, [2008] O.J. No. 2095, ¶ 20 (Can.) ("[t]he court cannot enforce a contract unless it knows what the terms are which is [sic] sought to enforce. It is very old law that 'an agreement to agree' cannot be a valid contract."). There is, however, an exception to the general rule that an agreement to agree is not an enforceable contract. "The Court may find that the parties reference in their documentation to a formal agreement was only intended as a means of monumenting or of executing the contract which they have concluded between themselves." *Vas-Cath Inc. v. Mahurkar,* [2002] F.C.J. No. 1189, ¶ 4 (Can.). Whether the parties intend to be bound becomes a matter of construction, and "much will depend on the circumstances." *Id.*; *Dominion Stores Ltd.*, 2 O.R.2d at 285-86. This is a fact-intensive evaluation where the court is to look at a number of factors including the course of dealing between the parties, the parties' actions subsequent to their exchange of documents, and the particular circumstances in which the agreement reached. *Vas-Cath Inc.,* [2002] F.C.J. No. 1189, at ¶ 4. This in-depth weighing of the evidence is poorly suited to a motion to dismiss where the court is limited to evaluating the pleadings, as "a motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden*, 404 F.3d at 958-59.

Accordingly, CSDC's Motion for Dismiss Count I is **DENIED**.

## V. CONCLUSION

For the foregoing reasons, this Court **DENIES** CSDC's Motion to Dismiss Count I Breach of Contract.

**IT IS SO ORDERED.**

                                        **/s Algenon L. Marbley**
                                        **ALGENON L. MARBLEY**
                                        **UNITED STATES DISTRICT JUDGE**

**Dated: April 14, 2010**